## MORSE et al. v. BOARD OF COM'RS OF MARSHALL COUNTY.

No. 23404.   Dec. 4, 1934.

Reuel W. Little, for plaintiffs in error.

E. S. Hurt, Co. Atty., for defendant in error.

PER CURIAM. As the parties hereto occupy the same relative positions they occupied in the trial court, they will be referred to as the plaintiffs and the defendant.

This is an action brought by the plaintiffs, as the owners and lienholders of certain real estate which was taken and appropriated by the said defendant for its own use and purpose, to wit, a public highway, without the consent of, or compensation to, said plaintiffs, who claim that said appropriation by said defendant was wrongful and without any process of law whatsoever, and was taken under a purported right-of-way grant given said defendant by one Alec Chastain, the owner of the legal title, which said grant was dated November 24, 1925, and recorded May 8, 1926, in the office of the county clerk of Marshall county; that at the time of the said taking by the defendant, the said plaintiffs had an existing mortgage for $4,000, dated May 26, 1923, and a second mortgage on said land, through which said highway was constructed by said defendant, which said mortgages were and had been duly recorded in the office of the county clerk of Marshall county, thereby giving notice to said defendant, at the time of said taking, of the existence of a lien in favor of said plaintiffs by virtue of said mortgages. That on December 16, 1925, a suit was instituted to foreclose said second mortgage, and after judgment thereon, a sheriff's deed was executed on December 5, 1927, and a deficiency judgment taken for more than the amount of damages claimed by the plaintiffs in this cause.

On October 1, 1928, a claim was filed with the board of county commissioners for the sum of $147 for the taking of 2.1 acres of land for said highway purposes. Said claim was disallowed. On October 29, 1928, suit was commenced by said plaintiffs for the sum of $147 and attorney fees, against said defendant.

The defendant filed its answer and cross-petition on October 31, 1928, which consisted of a general denial, and the allegation that plaintiffs were guilty of laches and allowed said highway to be constructed without asserting any right, title, or interest in and to said land; that the statute of limitation had run in that said plaintiffs had failed for more than two years to file said claim for damages with the defendant, after said highway was constructed, and said plaintiffs were barred from setting up any claim against said defendant.

A jury was waived and said cause tried to the court. The court made the following findings of fact and conclusions of law:

"That the defendant, the board of county commissioners of Marshall county, state of Oklahoma, has filed herein its answer by its county attorney, which answer was filed October 31, 1928, and upon the issues joined, the court finds that plaintiffs at the time of filing suit herein were the owners of the legal and equitable title in fee simple in and to the premises herein and that at the time of filing suit herein a foreclosure of a second mortgage owned by Geo. R. Fish & Company had been made and deeds conveying said lands were executed to Agnes L. Morse, and that there is a $4,000 mortgage outstanding on said land and premises. That sheriff's sale was confirmed herein on foreclouse of the second mortgage on the 5th day of December, 1927.

"That in the spring of 1926 the board of county commissioners of Marshall county, state of Oklahoma, surveyed a road across the premises and lands described in plaintiffs' petition and said road was 60 feet in width and approximately 1,657 feet in length, and that said right of way was taken and appropriated without the consent of plaintiffs in this suit, the holders of the first and second mortgage at the time of the taking thereof, and that the same cut diagonally across a 40-acre tract of said land and premises herein, leaving approximately 12 acres on one side and the balance on the other side of the road, and that the county constructed a road, being a gravel road, across said land aforesaid. That in con-

structing said road the county took and appropriated for the use of said road approximately two and one-tenth acres of land.

"The court further finds specifically that the value of plaintiffs' security was not diminished by reason of the road going through the land, and that plaintiffs in fact were benefited by reason of said road, and that said road provided a way and means of transportation through said farm, which was more convenient than that used prior to the construction of said road and that the security of the plaintiffs was not diminished by reason of the construction of said road, and that plaintiffs being benefited thereby, because of said road, and are not entitled to recover against the defendant for any sum whatsoever, to which finding of the court the plaintiffs then and there excepted and their exceptions are allowed.

"The court concludes as a matter of law as follows: That plaintiffs would be entitled, under the evidence submitted, to the value of the diminution of the land and premises, but that said land and premises were benefited by reason of the construction of said road. As a matter of law they are not entitled to recover anything herein, to which conclusion of the court on the matter of law, the plaintiffs except and their exceptions are allowed.

"It is, therefore, ordered, adjudged and decreed by the court that the plaintiffs take nothing and that the defendant recover its costs and go hence, and to which action of the court the plaintiffs except and their exceptions are allowed, and plaintiffs in open court give notice of appeal to the Supreme Court."

Thereafter a motion for a new trial was properly filed by said plaintiffs and overruled by the court, with the proper exceptions and notice of appeal.

For reversal, the plaintiffs have filed herein their petition in error containing eight assignments of error, all of which are argued in their brief under two general propositions. to wit:

"1. The judgment of the court that the value of the plaintiffs' security was not diminished is not sustained by competent evidence. Assignments 1, 2, 3, 4.

"2. The court erred, as a matter of law, in failing and refusing to assess the damages done to the property of the plaintiffs irrespective of any benefits derived from the improvements. Assignments 1, 2, 3, 4, 5, 6, 7, and 8."

Under these assignments, it will be necessary to briefly set forth the evidence especially in view of the findings of facts and conclusions of law by the court, to which the plaintiffs excepted.

The facts shown by the evidence briefly are as follows:

The owner of the land, Alec Chastain, on May 26, 1923, gave to Geo. R. Fish & Company a first mortgage for $4,000, payable November 1, 1932, and a second mortgage for $1,500. The first mortgage was filed for record May 29, 1923, and was introduced in evidence. The second mortgage was filed for record, but date not given.

On November 24, 1925, Alec Chastain executed and delivered to the county of Marshall, Okla., a right of way grant, consideration $1, which was paid to him, whereby he conveyed, "All of a certain tract or parcel of land 60 feet in width across the S.E. ¼ of section 26, township 5, south, and range 5 east of the Indian base and Meridian" in Marshall county, Okla. This strip was approximately 1,657 feet in length and contained 2.1 acres. This instrument was filed of record May 8, 1926. The plaintiffs herein, and the mortgagees, or owners of the mortgages, were not consulted. This instrument contained the following words: **"To have and to hold** the said described lands unto the said county forever, for the sole and only purpose of opening, constructing, and maintaining thereon a perpetual roadway to be known as a part of the county highway of said county and warrant the title to the same. **It is expressly understood and agreed** that said county shall have the right to survey, open, construct, and maintain said roadway at such time and in such manner to meet the requirements of the state federal engineers and shall have the right to remove any and all obstructions of every nature from said land for the purpose of surveying, opening, constructing and maintaining said road way."

The contract for the construction of the road was let about November 15, 1925, and the road constructed sometime in the spring of 1926. The right of way grant was recorded May 8, 1926.

Attached to the plaintiffs' petition is the petition or claim of Geo. R. Fish & Company against the county for $147, as damages for the taking of 2.1 acres for road purposes. This claim was disallowed. It was filed with the county clerk of Marshall county on or about October 1, 1928. It refers to the filing by the petitioner of proceedings in foreclosure on or about December 25, 1925, wherein the second mortgage upon the land was foreclosed.

A sheriff's deed dated December 17, 1927, conveyed the land to Geo. R. Fish & Company, subject to the $4,000 mortgage. This

deed, which was recorded March 2, 1928, recites that on March 15, 1927, a judgment was rendered in the district court of Marshall county, Okla., wherein Geo. R. Fish & Company was plaintiff and Alec Chastain et al., including the board of county commissioners of Marshall county, were defendants, for the sum of $1,080 and interest. The consideration of the deed was $300. The holder of the mortgage for $4,000 was not a party to the action.

Geo. R. Fish & Company, the purchaser of said land at the sheriff's sale, on January 27, 1928, by general warranty deed, conveyed the land to Henry W. Ulrich, warranting said land to be "free, clear and discharged and unincumbered of and from all former and other grants, titles, charges, estates, judgments, taxes, assessments and incumbrances, of whatsoever nature and kind, except—and that it will **warrant and forever defend** unto said party of the second part," etc. This deed was recorded March 2, 1928. The plaintiff, Henry W. Ulrich, joined by his wife, conveyed said land to Agnes L. Morse, one of the plaintiffs, in the month of August, 1928. This instrument of conveyance was a quitclaim deed and was recorded August 23, 1928.

The defendant entered upon said land without the consent or knowledge of any of the plaintiffs and made a survey for said highway. The plaintiffs allowed the defendant to construct the said highway, spending the taxpayers' money and making valuable and lasting improvements thereon. The only protest made on behalf of the plaintiffs was made by the witness M. E. Ewing, who testified that while the road was being built, he was appointed receiver in case No. 2886, Geo. R. Fish & Company v. Alec Chastain. The testimony is silent as to whether or not this was the case in which the second mortgage was being foreclosed. This witness stated that he went to the defendant and protested against the taking of the land, as he thought they were taking advantage of a foreign owner.

The only evidence as to damages or the value of the land taken is in the testimony of the witness for plaintiff, M. E. Ewing, who made the loan for Geo. R. Fish & Company, and went over the land at that time; at the time the road was constructed, the land was worth $50 to $65, and the damage was $147. The plaintiffs had to build fences along the new highway, and to enter the land cut off by the road, it was necessary each time to open and close two gates.

The defendant offered the testimony of the chairman of the board of county commissioners, to the effect that the land taken was practically worthless, and that Alec Chastain tried to sell the land for what the loan was, $50, and could not get it; that the value of the land was helped by a good road.

The sheriff's deed shows that the land was sold subject to the first mortgage for $4,000, while the general warranty deed from Geo. R. Fish & Company, grantee in the sheriff's deed, conveyed the same free and clear from said mortgage.

The defendant in its brief makes the statement:

"The $4,000 first mortgage, although made to Geo. R. Fish & Company, one of the plaintiffs in error, was, on May 31, 1923, sold, together with the $4,000 note which it secured, to Home Savings & State Bank. This assignment was made in the same month of May, 1923, in which the mortgage was executed by Chastain to Geo. R. Fish & Co. on the 23rd of that month."

This assignment was not shown or proven in the record.

In the taking of the land in question for highway purposes, Marshall county must obtain the same as provided by the Constitution and the laws of the state of Oklahoma. The only way to obtain this land was either by condemnation as provided by section 24, art. 2, of the Constitution, and chapter 63, art. 1, O. S. 1931, or by purchase from the owner, the same as a private individual would purchase land from another.

The defendant based its claim to the land upon the right-of-way grant executed by A. M. (Alec) Chastain, the record owner, dated November 24, 1925. This defendant had a right to do and would have received a good title, and no person could have complained, had it not been that the land so conveyed was part of the land included in the first and second mortgages given May 26, 1923, by Alec (A. M.) Chastain. The mortgagees in these mortgages had the right to look to all of the land, including the land taken by the defendant for highway purposes, for the satisfaction of said mortgage indebtedness. The owner of the land and the defendant could not deprive the mortgagees of this right except by due process of law, payment of the mortgages, or by condemnation of the mortgagees' rights or interests.

"Section 24, art. 2, Constitution. Private property shall not be taken or damaged for public use without just compensation. Such compensation, **irrespective of any benefit from any improvements proposed,** shall be ascertained by a board of commissioners of not less than three freeholders, in such man-

ner as may be prescribed by law. The commissioners **shall not be appointed by any judge or court without reasonable notice having been served upon all parties in interest.** * * * **Any party aggrieved** shall have the right of appeal, without bond, and trial by jury in a court of record." (Emphasis ours.)

Under the Constitution commissioners could not have been appointed "without reasonable notice having being served upon all parties in interest." The words, "all parties in interest," must be used in their broadest sense, and this being true, then the mortgagees were "parties in interest," and in condemnation proceedings must be served with notice before commissioners could be appointed. "Any party aggrieved" shall have the right of appeal, etc., is broad enough to include any person upon whom notice was served or should have been served. Since the defendant county was taking part of the mortgagees' security, the latter were interested in seeing that the security was not diminished, and if diminished without just compensation to them, they would have the right of appeal as "parties aggrieved."

If the defendant had brought condemnation proceedings against Alec Chastain, without having made the mortgagees parties, the mortgagees could have intervened as "parties in interest" and had their interests adjudicated and their part of the damages awarded them, or their mortgage lien declared to have been a lien upon the amount awarded by the commissioners or allowed by the jury.

"In condemnation proceedings by a city begun and prosecuted against the fee owner of certain real estate, who excepts to the report of commissioners and demands a jury trial, the owner of a leasehold estate in the same premises, who intervenes by leave of court and submits his claim to the court and jury, thereby waives appraisement of his interest by commissioners, and this waiver is not a matter of which the city may complain." City of Tulsa v. Richmond, 123 Okla. 255, 253 P. 279.

"The courts are not agreed as to the proper disposal of the compensation when mortgaged property is taken or injured under the power of eminent domain. In many cases it is held that the mortgagee **is an owner or person interested in the property** and, as such, entitled to compensation from the condemning party to the extent of his interest, and the same rule applies to an assignee or grantee of the mortgage. * * * It is generally held, however, that the award is a substitute for so much of the mortgaged property as is appropriated for public use, and that the mortgagee has in equity a lien on the award to the extent of the mort-

gage debt, or to the extent of the deficiency where there has been a forclosure sale." * * * * 20 C. J. p. 856, sec. 291.

"A mortgagee, who was not made a party to an action by mortgagor against railroad to recover compensation for the taking and use of land by railroad company pending proceedings to foreclose the mortgage, is entitled to commence and maintain an action against a successor of the mortgagor to have it determined that she was equitably entitled to the benefits obtained by such mortgagor against the railroad, there being a deficiency judgment in the foreclosure proceedings." Rose et al. v. Conlin et al. (Cal.) 198 P. 653.

The defendant in its brief admits that the mortgagee, in the $4,000 or first mortgage, if it was not barred by the statutes of limitation, was entitled to damages of some amount, and that it does not believe the law contemplates that a mortgage lien may be destroyed by condemnation proceedings, or the taking of a right-of-way grant. There is nothing in the testimony of this case to show that the plaintiff, Geo. R. Fish & Company, was not the owner of the mortgage at the trial of this case, which was held on the 6th day of October, 1931. We find the allegation of the ownership of said mortgage in the plaintiffs' petition. The record of this mortgage was admitted in evidence without objections on the part of the defendant. The defendant offered no evidence, as far as we have been able to find, that Geo. R. Fish & Company was not the owner, except by inference that it was at one time assigned, but as to whom and when the record is silent.

There is no proof as to whether or not, at the time of the trial, the first mortgage of $4,000 had been paid, except that which may be inferred from the exhibits, the sheriff's deed, in which is the recital, "said land being sold subject to the certain $4,000 mortgage hereinbefore mentioned," and the general warranty deed executed by Geo. R. Fish & Company, the grantee in the sheriff's deed, to Henry W. Ulrich, wherein said grantor warranted said land as "free, clear and discharged and unincumbered of and from all former and other grants, titles, charges, estates, judgments, taxes, assessments and incumbrances of whatsoever nature and kind."

Under the pleadings and the evidence we are of the opinion, and so hold, that the plaintiffs were entitled to recover damages, unless the defenses set up in the answer and cross-petition of the defend-

ant constitute a good and valid defense and are supported by the evidence.

The answer and cross-petition of the defendant sets up the following: (1) General denial. (2) Good and perfect title to the land taken for highway purposes. (3) That said plaintiffs were guilty of laches, having stood idly by and permitted valuable construction work to be done on the land, valuable not only to the citizenship at large, but to adjoining lands, for that by reason of failure of plaintiffs to assert right, title, or interest, they have waived the same. (4) That plaintiffs did not file any claim with the board of county commissioners for more than two years after a highway was constructed on said lands, and that plaintiffs were barred from setting up a claim against the county.

The general denial is not sufficient for the reason that plaintiffs proved their cause of action and that they were entitled to damages.

The evidence does not show that the county had a good and perfect title to the land taken for highway purposes. The defendant claimed title under the right-of-way grant, dated November 24, 1925, executed by A. M. (Alec) Chastain to the county of Marshall, Okla. The land conveyed under this instrument was subject to the first and second mortgages, which later mortgage was foreclosed. The defendant board of county commissioners of Marshall county was a party defendant in this foreclosure proceeding, as shown by the sheriff's deed. This deed, dated December 5, 1927, which was made to the plaintiff Geo. R. Fish & Company, conveyed "all the estate, right, title, and interest which said judgment debtors and each of them had on the date of the execution of the mortgage foreclosed in said action, or at any time thereafter, or now have, or, in, and to the following described real property and premises (describing the same), said lands being subject to a certain mortgage in the principal sum of $4,000, with interest, together with all and singular the tenements, hereditaments, and appurtenances thereunto belonging, or in any wise appertaining," etc. This sheriff's deed divested the county of any and all title it had to this land by virtue of the right-of-way grant, and the land so taken and appropriated belonged to said plaintiffs.

The defense that said plaintiffs were guilty of laches and permitted valuable construction work to be done is not sufficient under the decisions of this court.

"Where a public service corporation,

vested with the power of eminent domain, enters into actual possession of land necessary for its corporate purposes, with or without the consent of the owner, and the owner remains inactive, stands by and permits such corporation to go on and spend large sums of money in constructing its railroad, or telegraph wires, or pipe lines, or mains, or plants, or other necessary fixtures, the owner is estopped from maintaining either trespass or ejectment, and will be regarded as having acquiesced therein, and is restricted to a suit for damages for the value of the land, on the theory that the public has acquired an interest in the appropriation. Under such circumstances, an appropriation will be treated as equivalent to title by condemnation." St. Louis & S. F. R. Co. et al. v. Mann, 79 Okla. 160, 192 P. 231; Peckham et al. v. Atchison, T. & S. F. Ry. Co. et al., 88 Okla. 174, 212 P. 427; Colclazier et al. v. Simpson, 103 Okla. 232, 229 P. 1054.

The final defense of the defendant is the statute of limitation, in that the plaintiffs did not file their claim for damages within two years after the highway was constructed on said lands, and cite in support thereof section 5763, C. O. S. 1921 (sec. 7458, O. S. 1931), which provides as follows:

"No account against the county shall be allowed unless presented within two years after the same accrued."

This is not applicable, for this court has held:

"Section 5763, Comp. Stats. 1921, which provides that 'no account against the county shall be allowed unless presented within two years after the same has accrued,' is a special limitation upon the authority of the board of county commissioners to allow accounts against the county unless presented within two years, and does not require one who has a claim for damages against the county because of the wrongful excluding of him from possession of his real property to file his claim with the board of county commissioners as a prerequisite to maintaining his action in court for such damages." Board of County Commissioners of Rogers County v. Baxter et al., 113 Okla. 280, 241 P. 752.

The defendant also contends in its brief that there is another section of the statute which applies:

"Section 185 (subdivision 3) C. O. S. 1921 (sec. 101, O. S. 1931), is as follows:

" 'Civil actions, other than for the recovery of real property, can only be brought within the following periods after the cause of action shall have accrued, and not afterwards: * * *

" 'Third, Within two years. An action for trespass upon real property.' "

The lower court did not pass on this ques-

tion of the statute of limitation and the defendant did not file a cross-appeal herein, but, in view of the fact that this question may be raised upon another trial in the lower court, we deem it best to pass on this matter.

The defendant contends that the cause of action, if any, accrued upon the completion of the construction of the highway through said land in the spring of 1926, and since the claim was filed with the county commissioners on October 1, 1928, that the two years' statute of limitation had expired. The suit was commenced on October 29, 1928. If the cause of action accrued in the spring of 1926, then the two years' limitation had expired; but with this contention we cannot agree.

The defendant knew in the spring of 1926 that Geo. R. Fish & Company held a second mortgage upon said land, and that whatever rights it had obtained under the right-of way grant on November 24, 1925, were subject to said mortgage, which was later foreclosed and judgment rendered on March 15, 1927. The sheriff's deed, which shows that the board of county commissioners of Marshall county was a party defendant, was executed to the plaintiff Geo. R. Fish & Company December 5, 1927. This deed must be taken as evidence that any right, title, or interest belonging to the defendant, or Marshall county, was extinguished, and from that time on the defendant was a trespasser so long as the public continued to use the highway. If the title was not extinguished, then it was the duty of the defendant to prove said fact, under its cross-petition, and it would have been a good defense, if the adjudication had shown the title of the right of way in the defendant. Therefore, since the cause of action in this case did not accrue until the date of the sheriff's deed, December 5, 1927, and this action having been commenced on October 29, 1928, it was not barred by the statute of limitation as contended by the defendant.

"In this state, when private property is sought to be taken for public use without the consent of the owner under statutory or constitutional authority **all presumptions indulged are in favor of the person whose property is sought to be taken without his consent.**" (Emphasis ours.) Watkins et al. v. Board of County Commissioners of Stephens County et al., 70 Okla. 305, 174 P. 523.

Justice Phelps, in the case of the Board of County Commissioners of Rogers County v. Baxter et al., 113 Okla. 280, 241 P. 752, has very well said:

"However, the Constitution of our state forbids municipalities to take property from private individuals or public institutions and devote the same to a public use without compensating the owner. The county is authorized by the Constitution to exercise the right of eminent domain to acquire the necessary property for public purposes. It is not the **intention of the Constitution that one citizen of a county should furnish a public highway from his property, without compensation, for the benefit and use of the general public.** (Emphasis ours.) This is a burden that should fall upon the public who use the road. The right to exercise the law of eminent domain is dependent upon the owner being compensated for the property taken from him for a public use. The Constitution imposes the requirement on the municipality, or the state, to compensate the owner for the property taken and appropriated to public use. The county is attempting to escape a burden placed upon it by the Constitution in asserting that it is not liable for the tortious acts of its officers in taking wrongful possession of the toll road. We think that no exception is made between municipalities and individuals in the requirement that owners should be compensated for all property taken and devoted to public or private use."

The lower court in its finding of facts and conclusion of law said in part as follows:

"That in the spring of 1926, the board of county commissioners of Marshall county, state of Oklahoma, surveyed a road across the lands and premises described in the plaintiffs' petition and said road was 60 feet in width and approximately 1,657 feet in length, and that said right of way was taken and appropriated without the consent of plaintiffs in this suit, the holders of the first and second mortgage at the time of the taking thereof, and that the same cut diagonally across a 40-acre tract of said land and premises, leaving approximately 12 acres on one side and the balance on the other side of the road, and that the county constructed a road, being a gravel road, across said land aforesaid. That in constructing said road the county took and appropriated for the use of said road approximately 2.1 acres of land."

"The court further finds specifically that the value of plaintiffs' property was not diminished by reason of the road going through the land and that plaintiffs in fact were benefited by reason of said road and that said road provided a way and means of transportation through said farm, which was more convenient than that used prior to the construction of said road, and that the security of the plaintiffs was not diminished by reason of the construction of said road, and that plaintiffs being benefited thereby, because of said road, are not entitled to recover against the defendant for

any sum whatsoever, to which finding of the court the plaintiffs then and there excepted and their exceptions are allowed."

"The court concludes as a matter of law as follows: That plaintiffs would be entitled, under the evidence submitted, to the value of the diminution of the land and premises, but that said land and premises were benefited by reason of the construction of said road. As a matter of law, they are not entitled to recover anything herein, to which conclusion of the court on the matter of law, the plaintiffs except and their exceptions are allowed."

The court says the defendant took 2.1 acres for highway purposes without the consent of the plaintiffs, the holders of the first and second mortgages at the time of the taking, leaving 12 acres on one side and leaving the balance on the other side. The road was constructed diagonally through the land, overlooking the fact that the testimony shows that the plaintiffs were compelled to build fences along the road and to open and close two gates when going from one side of the road to the other, This taking of the land and damaging the same to the extent of building of fences and the necessity of opening and closing two gates, is prohibited by article 2, sec. 24, of the Constitution, unless the plaintiffs were compensated.

"Private property shall not be taken or damaged for public use without just compensation. Such compensation, irrespective of any benefit from any improvements proposed, shall be ascertained by a board of commissioners of not less than three freeholders, in such manner as may be prescribed by law. The commissioners shall not be appointed by any judge or court without reasonable notice having been served upon all parties in interest. * * * Any party aggrieved shall have the right of appeal, without bond, and trial by jury in a court of record. Until the compensation shall be paid to the owner, or into court for the owner, the property shall not be disturbed, or the proprietary rights of the owner divested." As interpreted by this court in the following decisions: Watkins et al. v. Board of County Com'rs of Stephens County et al., 70 Okla. 305, 174 P. 523; Board of County Commissioners of Rogers County v. Baxter et al., 113 Okla. 280, 241 P. 752; State Highway Commissioners v. Smith, 146 Okla. 243, 293 P. 1002.

The court in its finding of facts further said that the plaintiffs' security was not diminished by reason of the road going through the land, because it was benefited by reason of the construction of the road. The land may have been benefited by the construction of the road, but this fact can-

not be taken into consideration, if our understanding of the Constitution is correct, and we believe it is. Article 2, sec. 24, of the Constitution, supra, provides:

"Such compensation, **irrespective of any benefits from any improvements proposed,** shall be ascertained by a board of commissioners of not less than three freeholders, in such manner as may be prescribed by law."

The proposed highway, even if it was a benefit, could not be considered in reducing or offsetting damages to the value of the land taken.

The court in its conclusions of law says:

"That plaintiffs would be entitled, under the evidence submitted, to the value of the diminution of the land and the premises, but that said land and premises were benefited by the reason of the construction of said road."

Under this statement the court admitted that the plaintiffs were entiled to damages, but evidently overlooked that part of art. 2, sec. 24, of the Constitution which reads:

"Such compensation, irrespective of any benefit from any improvements proposed," etc., and the measure of damages as set forth in the following decisions:

"The measure of damages in condemnation proceedings where private property is taken in the exercise of the right of eminent domain under the statutes of Oklahoma, is the market value of the property actually taken at the time it is so taken and compensation for the impairment or depreciation of value done to the remainder. In ascertaining the amount of damages or compensation, the jury may take into consideration not only the purposes to which the remainder is or has been applied or used, but any other beneficial purpose for which the jury may see from the evidence such real property might reasonably be used and which would affect the amount of compensation or damages." City of Cushing v. Sarber, 92 Okla. 59, 217 P. 866; Oklahoma Natural Gas Co. v. Coppedge, 110 Okla. 261, 237 P. 592; City of Tulsa v. Horwitz, 131 Okla. 63, 267 P. 852.

The lower court having committed error in its finding of facts, and the same not having been sustained by the evidence, and error having been committed in the conclusions of law, this cause is reversed and remanded to the lower court, with instructions to set aside the judgment rendered herein, and to grant a new trial to be held in accordance herewith.

The Supreme Court acknowledges the aid of Attorneys L. L. Cowley, Leon C. Phillips, and J. I. Pitchford in the preparation of

this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Cowley, and approved by Mr. Phillips and Mr. Pitchford, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.